UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                 :

SECURITIES AND EXCHANGE
COMMISSION,                       :

                          Plaintiff,     :          11 Civ. 4904 (JPO)
                                 :

                -v-              :          MEMORANDUM
                               :            AND ORDER

COMPANIA INTERNACIONAL FINANCIERA :
S.A. et al.,                   :

                      Defendants.  :

                                 :
---------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

On July 15, 2011, Plaintiff Securities and Exchange Commission (the "Commission" or

the "SEC") initiated this action against Defendants Compania Internacional Financiera S.A.

("Compania"), Coudree Capital Gestion S.A. ("Coudree"), and Chartwell Asset Management

Services ("Chartwell"), alleging that the defendants traded on the basis of material, non-public

information in July 2011 relating to the acquisition of Arch Chemicals, Inc. ("Arch") by Lonza

Group Ltd. ("Lonza"). On February 14, 2012, the Commission and Chartwell stipulated to the

dismissal of the action against Chartwell without prejudice, and Chartwell was terminated from

the action. On February 10, 2012, the Commission filed a motion pursuant to Federal Rule of

Civil Procedure 41(a)(2) to dismiss its complaint against Compania and Coudree (together

"Defendants") without prejudice. Defendants opposed the motion, arguing that any dismissal of

this action should be with prejudice.

For the reasons set forth below, the Commission's motion to dismiss without prejudice is

granted.

I.      **Background**

Familiarity with the factual and procedural background of this matter is assumed.

The Commission filed this action on July 15, 2011 against Compania, Coudree, and Chartwell.  On that same day, the Commission obtained an ex parte temporary restraining order ("TRO"), freezing assets of all three defendants, pending a hearing on the Commission's motion for a preliminary injunction.  (Dkt. No. 2.)

Prior to the preliminary injunction hearing, Compania, Coudree, and the Commission modified and extended the TRO.  On July 26, 2011, Compania and Coudree agreed to place $14,784,006 in the Court's CRIS account to remain frozen during the pendency of the action. (Dkt. No. 24.)  The agreement also set an expedited discovery schedule, with discovery concluding January 20, 2012, but provided that any party could move, for good cause, to amend the schedule.  On July 26, 2011, the Court entered this order by consent.  (*Id.*)

Chartwell did not consent to provide a bond during the pendency of this action, and on July 29, 2011, Judge Denise L. Cote, to whom this case was previously assigned, granted the Commission's motion for a preliminary injunction against Chartwell, entering an asset freeze during the pendency of the action and enjoining Chartwell from destroying any potentially discoverable materials.  (Dkt. Nos. 38, 39.)  On October 12, 2011, this matter was reassigned to the undersigned.

Pursuant to the revised schedule, motions for summary judgment were due on February 13, 2012.  A few days prior to the deadline for moving for summary judgment, the Commission contacted all of the Defendants and requested that they stipulate to dismissal of the action without prejudice.  Chartwell agreed to the proposal.  The Court endorsed the stipulation

between the Commission and Chartwell to dismiss the claims against Chartwell without

prejudice on February 14, 2012.  (Dkt. No. 117.)

Compania and Coudree objected to the Commission's proposal, taking the position that

any dismissal should be with prejudice.  On February 10, 2012, the Commission moved to

dismiss the complaint against Compania and Coudree without prejudice.   Four days later, on

February 14, 2012, Compania and Coudree filed an opposition to the motion to dismiss the

complaint without prejudice.  (Dkt. No. 110.)  On that same day, Defendants filed a motion for

summary judgment.  (Dkt. No. 113.)  The Court subsequently stayed the briefing schedule on

Defendants' motion for summary judgment pending the decision on the Commission's motion to

dismiss without prejudice.  (Dkt. No. 122.)

## II.      Discussion

Federal Rule of Civil Procedure 41(a) provides that, except where the parties agree to a

stipulation of dismissal, after the defendant has answered the complaint or moved for summary

judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms

that the court considers proper."  "However, although voluntary dismissal without prejudice is

not a matter of right, the presumption in this circuit is that a court should grant dismissal

pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a

result."  *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 261 F.R.D. 29, 31 (S.D.N.Y. 2009); *see*

*also Sec. Exch. Comm. v. Chakrapani*, Nos. 09 Civ. 325, 09 Civ. 1043, 2010 WL 2605819, at *2

(S.D.N.Y. June 29, 2010).

The Second Circuit has identified "two lines of authority" to guide district courts when

considering contested motions to dismiss without prejudice.  *Camilli v. Grimes*, 436 F.3d 120,

123 (2d Cir. 2006).  "One line indicates that such a dismissal would be improper if 'the

defendant would suffer some plain legal prejudice other than the mere prospect of a second

lawsuit.'" *Id.* (citing *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)).  The

other line requires the district court to consider a non-exhaustive list of factors, known as the

*Zagano* factors, including (1) the plaintiff's diligence in bringing the motion, (2) any undue

vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the

defendant's efforts and expense in preparation for trial, (4) the duplicative expense of

relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss.  *Id.*;

*Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990); *see also D'Alto v. Dahon California,*

*Inc.*, 100 F.3d 281, 284 (2d Cir. 1996).  These factors need not be weighted equally, and no

single factor is dispositive.  *Chakrapani*, 2010 WL 2605819, at *2.  The most important inquiry

remains whether the defendant will suffer substantial prejudice as a result of a dismissal without

prejudice.  *Id.*

### A.    Discovery

As a threshold matter, it is important to understand the history of discovery in this case,

which informs a number of the factors to be considered on this motion.  The parties agreed at the

outset to an expedited discovery schedule, with fact discovery to be completed by January 20,

2012, and expert discovery by January 26, 2012.  Yet at the close of the discovery period, the

Commission contends that it is still without significant categories of relevant information.

One obstacle to discovery has been the fact that most of the records and witnesses in this

case are in Switzerland (or elsewhere in Europe).  Thus, although the Commission has submitted

dozens of requests to foreign regulators in five countries and has interviewed or deposed

numerous foreign witnesses overseas, it has been unable to speak with insiders at Lonza or at

Swiss investment banks, or to obtain documents from such third parties (despite its efforts to do so), due to European banking, data protection, and privacy laws.

The parties have also raised a number of discovery disputes, which the Court has endeavored to address promptly, at conferences held on November 9, 2011; January 6, 2012; and January 23, 2012. This has compounded the delays in the production of potentially relevant documents. Thus, for example, the Commission states that it has not yet received many of the foreign brokerage records that were ordered to be produced on November 9, 2011.

Finally, and most significantly for purposes of the present motion, there is reason to question whether Defendants' discovery responses have been completely thorough. During the January 23, 2012 telephone conference, counsel for Defendants initially indicated that they had not themselves reviewed the emails of Mr. Yomi Rodrig (the individual who authorized the investments at issue in this action for Compania and Coudree), but that they had merely asked Mr. Rodrig himself to review his own emails and provide any documents that he relied on in deciding to purchase Arch stock. (Transcript of January 23, 2012 conference, Dkt. No. 126 ("Jan. 23, 2012 Tr.") at 25-27.) Defendants' counsel then clarified that they had asked Defendants' employees (presumably including Mr. Rodrig) to run the search terms "Arch," "Lonza," and "ARJ" through their Bloomberg email accounts. (Jan. 23, 2012 Tr. at 28.) The Commission contends that these search terms were insufficient. Even so, it is not clear that all documents responsive to even these limited search terms were produced. The Commission identified a document, which was responsive to the search terms (the subject of the email was ARJ), but that was not produced as a result of any search done by Defendants. Instead, this email was produced only after Mr. Rodrig made the Commission aware of the document during

his deposition on September 13, 2011 and after Defendants conducted a search specifically to locate it.  (Jan 23, 2011 Tr. at 30-31.)

As another example, although the Commission had requested information about relevant employees' telephone numbers in July 2011, it was not until January 2012, when a third party (Bloomberg) was directed to produce communications, that the Commission learned of previously undisclosed telephone numbers associated with two key individuals, including Mr. Rodrig.

Most troubling,  as the Commission learned in January 2012, is the fact that Mr. Rodrig discarded his Blackberry device on August 11, 2011—the very day that defendants' responses to the Commission's initial document requests were due.  The Blackberry was the main, if not the only, device that Mr. Rodrig used to communicate during the times relevant to this action.  In addition to being suspicious, the discarding of this device very likely was in violation of the consent order requiring the preservation of relevant evidence in this case.  (*See* Dkt. No. 24 (defendants must "refrain from destroying, altering, concealing or otherwise interfering with the access of the Commission to any and all documents . . . that are in the possession, custody or control of the defendants and each of their respective officers [and] agents.").)

Defendants attempt to minimize the seriousness of this event, contending that Mr. Rodrig used only Bloomberg email to communicate when using the Blackberry and that this email is recoverable as a result of the Bloomberg subpoena.  Defendants emphasize that Mr. Rodgrig represented that he did not send any text messages on his Blackberry.  Thus, in their view, "[t]he suggestion that the Blackberry *may* have had something of relevance is highly suspect and pure speculation."  (Opp. at 14 note 12.)  The Court finds that it is the discarding of the Blackberry that is suspect.  It is, quite literally, a matter of speculation whether relevant evidence existed on

the Blackberry, but that is only because the device has been discarded.  An individual employee

or executive, such as Mr. Rodrig, may have forgotten about certain communications he sent or

received, or may have an incentive to hide such communications.  Moreover, a device such as a

Blackberry may contain telephone data and cache data relating to emails, text messages, and

internet browsing that is not immediately apparent to the user.  It is for these reasons that a party

is under an obligation to take reasonable steps to ensure the preservation of potentially relevant

sources of evidence—not just those documents that they have initially and unilaterally deemed

responsive to a document request.  *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431-

32 (S.D.N.Y. 2004).  It is with good reason that, where evidence has been destroyed, courts

allow an inference that "evidence would have been unfavorable to the party responsible for its

destruction." *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998).

Here, the Court is not faced with a spoliation motion.  However, it is relevant to the

equitable analysis required by the Commission's motion to note that the problems with discovery

in this case have been extensive, and have been in significant part the result of Defendants'

conduct.

### B.      Zagano Factors

The Court next examines each of the five *Zagano* factors, as well as the issue of

substantial prejudice to Defendants.

#### i.      Diligence

The first factor is the plaintiff's diligence in bringing the motion.  Defendants argue that

the Commission has not been diligent in seeking to dismiss this case without prejudice, as it did

so on the eve of the deadline for summary judgment motions.  Conversely, the Commission

maintains that it has proceeded diligently under the expedited schedule; that it was still reviewing

recently received discovery and awaiting outstanding discovery at the time its motion was filed;

and that the two weeks between the close of discovery and the Commission's motion seeking to

dismiss the action without prejudice do not constitute prejudicial delay.

It is clear that the parties have worked industriously under a compressed schedule.  To be

sure, the Commission could have indicated earlier that it intended to seek a dismissal without

prejudice.  The Commission consistently indicated to the Court and to Defendants that it

intended to proceed with this action.  On February 3, 2012, Defendants reached out to the

Commission and asked if it would agree to dismiss the case prior to February 13, 2012 when

summary judgment briefs were due.  (Letter from Defendants' counsel to the SEC dated Feb. 3,

2012, Ex. B to Declaration of Amit Sondhi dated Feb. 14, 2012, Dkt. 115 ("Sondhi Decl."))  The

Commission responded that it was not in a position to fully respond until it completed the review

of the emails obtained from Bloomberg and was in receipt of other outstanding discovery.

(Email from the SEC to Defendants dated February 6, 2012, Ex. C to Sondhi Decl.)  With only

three business days remaining prior to the summary judgment filing deadline, the Commission

finally asked Defendants whether they would be willing to stipulate to the dismissal of the action

without prejudice, which Defendants have refused.  (*See* Opp. at 8.)

The Commission's delay in moving for dismissal without prejudice, however, is at least

partly explained by the discovery problems outlined above.  In the days and weeks leading up to

the summary judgment deadline, the Commission was continuing to review large amounts of

documents (including 65 gigabytes of Bloomberg emails produced in late January).  This state of

affairs resulted from the compressed discovery schedule (to which the parties agreed) as well as

the discovery hurdles that the Commission faced, including Defendants' less-than-diligent

conduct in discovery.

Still, Defendants had expended significant resources preparing their summary judgment motion by the time the Commission proposed dismissal without prejudice. (The Commission did propose adjourning the briefing schedule on the summary judgment motion pending a decision on the motion to dismiss, but by that point Defendants were eager for a decision on the merits.) The effort could have been saved had the Commission alerted Defendants earlier of its intention to seek dismissal without prejudice.

Thus, while the Commission could have acted earlier and avoided some prejudice to Defendants, its failure to do so was not due to a lack of *diligence*, and in any event was occasioned by discovery problems resulting in part from Defendants' conduct. Accordingly, the Court finds that this factor favors neither party.

### ii.       Undue Vexatiousness

Courts define "undue vexatiousness" to mean "that the plaintiff acted with 'ill-motive' in bringing or maintaining its claims." *Chakrapani*, 2010 WL 2605819, at *3 (citing *Versace*, 261 F.R.D. at 32). Defendants argue that Plaintiff's motion seeking dismissal without prejudice is unduly vexatious because it is brought to avoid an adverse determination on the merits.

Defendants make much of the fact that the Commission has not identified a "tipper" and argue in their opposition as well as their motion for summary judgment that, in the absence of such identification, Defendants are entitled to a favorable final determination on the merits, or to dismissal only with prejudice. However, Defendants conflate the Commission's failure to identify a tipper with their own success on the merits.[1] More significantly, it is entirely possible

---

[1] It is not inconceivable that the SEC could establish insider trading through circumstantial evidence alone. *See, e.g.*, *SEC v. Singer*, 786 F. Supp. 1158, 1164 (S.D.N.Y. 1992) ("Courts in the Southern District have held that circumstantial evidence such as suspicious timing of trades, contracts between potential tippers and tippees, and incredible reasons for such trades provide an adequate basis for inferring that tipping activity has occurred.").

that the Commission's failure to uncover smoking-gun evidence of a tipper is a result of the

problems it has encountered with discovery, including Defendants' failure to provide fulsome

discovery in this case.

There is no evidence that the Commission acted with any undue vexatiousness in

initiating or maintaining this action against Defendants.  Nor is there any evidence that the

Commission has maintained these claims for any reason other than to fulfill its mission and

protect the investing public.  Accordingly, this factor favors the Commission.

### iii.        Progress of the Action

As a result of the expedited schedule in this matter, discovery was formally closed only

two weeks prior to the summary judgment filing deadline.  Defendants maintain that the case is

now at a critical juncture, as they have submitted a motion for summary judgment and the case is

ripe for resolution on the merits.

In fact, although the discovery deadline has formally passed, discovery in this matter is

not complete, for all the reasons described above.  It is therefore a stretch to say that the case is

ripe for adjudication on the merits.  Were the Court to deny this motion, the Court would be

inclined to grant the Commission's alternative request and reopen discovery to allow the

Commission the opportunity to obtain and complete its review of the information sought.[2]

It may be relevant to note that Defendants agreed to deposit with the Court $14,784,006

in July 2011 (when the Commission first filed this case along with a TRO application)—and the

expedited discovery schedule was apparently part of the *quid pro quo* for their temporary

surrender of that money.  Now that the period has passed, Defendants understandably want their

_____

[2] The Commission has made clear that it intends to proceed with this case should its motion to dismiss without
prejudice be denied.  (Reply at 7.)

money back.  But they want more than their money:  they seek a clean bill of health, *i.e.*, a

dismissal without prejudice, precluding the Commission from bringing these claims again in the

future, regardless of what it finds in any further investigation.  That is too much to ask in light of

the hampered history of discovery here, in part due to Defendants' conduct.

Given that the parties have not successfully completed discovery, this factor also favors

the Commission.

### iv.        Expense of Relitigation and Prejudice to Defendants

It is well established that "the mere prospect of a second litigation upon the subject

matter," does not constitute legal prejudice.  *Jones v. Sec. Exch. Comm.*, 298 U.S. 1, 19 (1936);

*see also Chakrapani*, 2010 WL 2605819, at *4.  In this action, much of the expense has been

incurred in discovery, and any discovery obtained can be re-used in any future litigation.  *Id.*

Defendants' expense in preparing the motion for summary judgment does not weigh in favor of

denying the motion to dismiss without prejudice.  As noted, if the Court denied the instant

motion, the Court would be inclined to deny Defendants' motion for summary judgment without

prejudice to its renewal only after further discovery.  Defendants state that they have incurred

over $600,000 in legal fees and are now entitled to a determination on the merits.  (*See* Sondhi

Decl. ¶ 9.)  Yet, while this expense is certainly considerable, Defendants will still "be able to

utilize the fruits of these fees should the SEC . . . renew the[] action[]."  *Chakrapani*, 2010 WL

2605819, at *3 (granting the SEC's motion to dismiss the action without prejudice even though

defendant's legal fees exceeded $800,000).

Defendants also emphasize that a dismissal without prejudice would have a severe

negative reputational effect and that the threat of future litigation would harm, if not destroy,

Defendants' businesses.  The Court is not unsympathetic to Defendants' reputational concerns.

However, a dismissal without prejudice would place Defendants in the legal position that they occupied before the Commission's lawsuit was filed, and Defendants have not established that the reputational harms they cite would continue if the lawsuit were no longer pending. Moreover, Defendants have not shown that they would suffer from lingering negative reputational consequences distinct from other defendants confronted with the possibility of renewed allegations by the SEC.  And, as discussed above, given the incomplete nature of discovery, it is premature to conclude that Defendants are entitled to a favorable determination of the merits.

The prospect of a second litigation is not sufficient for the Court to deny the Commission's motion.  Defendants have not identified any concrete harm or prejudice that would result if this action is dismissed without prejudice.[3]  Accordingly, this factor favors the Commission.

### v.        Adequacy of Plaintiff's Explanation

In light of the Commission's inability to obtain critical information during the discovery period, the Court concludes that dismissal without prejudice is in the interest of justice.  The Commission's mandate is to protect investors, and a full and complete investigation is in the interest of the investing public.  The Commission's explanation is adequate, and this factor favors it.

---

[3] In their March 13, 2012 letter to the Court, counsel for Defendants claimed that "Mr. Rodgrig was recently denied a mortgage for the purchase of a property in New York City because of the SEC's pending allegations."  Defendants however, have not suggested that Mr. Rodrig would continue to be prejudiced if the action was dismissed without prejudice.

**III.    Conclusion**

Upon examination of the *Zagano* factors, the Court concludes that the weight of the factors favors the Commission.  Moreover, Defendants will not suffer substantial legal prejudice if this action is dismissed without prejudice.

For the foregoing reasons, the Commission's motion to dismiss the action against Defendants without prejudice is GRANTED.  Defendants' motion to vacate the order by consent and release the escrowed funds is DENIED as moot.  The Clerk of Court is directed to terminate the motions at docket numbers 107, 113, and 128, release Defendants' funds held in escrow by the Court, and to close this case.

SO ORDERED.

Dated: New York, New York
       May 22, 2012

_____
J. PAUL OETKEN
United States District Judge